1  PHILIP GREEN (State Bar No. 92389)
   BEVERLY R. GREEN (State Bar No. 92388)
2  LAW OFFICES OF GREEN & GREEN
   1000 4th Street, Suite 595
3  San Rafael, California  94901
   Telephone:  415.457.8300
4  Facsimile:  415.457.8757
   Email:  phil@iplegal.com
5
   Attorneys for:
6  PRIVATE MEDIA GROUP, INC and
   GAME LINK, LLC.
7

8

9

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12

13  ANGEL PICTURES INTERNATIONAL,     )   Case No.: 2:10-cv-09622
    INC., a California corporation,   )
14                                    )
                                      )
15              Plaintiff,            )
        vs.                          )
16                                    )   PLAINTIFFS  GAMELINK and PRIVATE,
                                      )   NOTICE OF MOTION and MOTION TO
17  SIN CITY ENTERTAINMENT, INC., a   )   DISMISS and POINTS and AUTHORITIES
    California Corporation dba General Video of )  IN SUPPORT THEREOF: FAILURE TO
18  America Inc., SinCityFilms.com and )   STATE A CLAIM AND FAILURE OF
    GameLink.com; RIGHT ASCENSION, INC.,)  JURISDICTION
19  a Pennsylvania corporation dba
    DVDEmpire.com and AdultDVDEmpire;     [FRCP 12(b)1 and 12 (b)6]
20  DATA CONVERSIONS, INC., a South
    Carolina corporation dba AEBN.com and  Date:  April 4,  2011
21  Adult Entertainment Broadcast Network;
    PRIVATE MEDIA GROUP, INC., a Nevada  Time: 10:00 am
22  corporation dba GameLink.com; GAME
    LINK, LLC, a Delaware limited liability  Judge: Hon. Dean D. Pregerson
23  company, dba GameLink.com; EXCALIBER
    ENTERTAINMENT, INC., a California      Place: Spring Street Courthouse
24  corporation dba ExcaliburFilms.com; and
    DOES 1 – 10,                          Room: 3-2nd Floor
25
26

27              Defendants.

28

*(left margin, vertical text)* Green & Green   1000 Fourth Street, Suite 595, San Rafael, CA 94901   (415) 457-8300   www.greenandgreen.com

Table of Contents

Table of Authorities ........................................................................................................ iii

NOTICE OF MOTION AND MOTION TO DISMISS .......................................... 1

I.  Memorandum of Points and Authorities  Introduction.................................. 1

II. STATEMENT OF FACTS – The License With Angel Pictures Waives Direct and

Contributory Claims in Copyright Litigation ...................................................... 3

a. Alleged Damages if any are de Minimis;  License Still Executory........................ 5

b. Arbitration Clause in License ...................................................................... 7

III.      THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF  Under FRCivP

12(b)(6)  ARGUMENT – POINTS AND AUTHORITIES ..................................... 8

a. Angel Waived Right to Copyright Claim by Licensing ................................... 9

b. Angel Cannot Demonstrate an Exception to its Waiver................................. 11

c. Unregistered Work .................................................................................. 15

d. The Three-Year Statute of Limitations..................................................... 15

IV.      THE COMPLAINT FAILS FOR LACK OF SUBJECT MATTER JURISDICTION

12(B)(1)...................................................................................................... 16

V. Claims of Unfair Competition Fail Where License Waives Rights  and provides GL Rights

to use Angel trademarks in its Discretion .................................................... 18

VI.      CONCLUSION No Infringement and No Contributory Infringement .......................... 21

1000 Fourth Street, Suite 595, San Rafael, CA 94001
(415) 457-8300    www.greenandgreen.com
Green & Green

**Table of Authorities**

## Cases

Crowley Marine Services, Inc. v. Fednav Ltd. (ED WA 1995) 924 F.Supp. 1030, 1033......... 16

De Forest Radio Telephone Co. v. United States, 273 U.S. 236, 242, 71 L. Ed. 625, 47 S. Ct. 366, (1927) ......................................................................................................................... 11

Effects Associates, Inc. v. Cohen, 908 F.2d 555, 559 (9th Cir.1990) ....................................... 14

Effects Assocs., 908 F.2d at 559 n.7 ........................................................................................ 14

Everex Systems, Inc. v. Cadtrak Corporation, 89 F.3d 673 (9th Cir. 1996) ............................ 10

In Re Acacia Media Technologies Corp., (ND CA 2005) 2005 WL 1683660 ........................ 18

In Re Literary Works in Electronic Databases Copyright Litig. (2nd Cir. 2007) 509 F3d 116,118. ................................................................................................................................. 18

Jacob Maxwell, Inc. v. Michael Veeck, 110 F.3d 749 (11th Cir. 1997) ................................... 11

Kokkonen v. Guardian Life Ins. Co. of America (1994) 511 US 375, 376–378, 114 S.Ct. 1673, 1675; ................................................................................................................................... 16

Machado v. Southern Pacific Transportation Co., 233 Cal.App.3d 347, 352, 284 Cal.Rptr. 560 (1991) ................................................................................................................................. 14

Peer Intl Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1338 (9th Cir. 1990).......................... 10

Reed Elsevier, Inc., v. Irvin Muchnick, Et Al. [No. 08-103., March 2, 2010], 130 S.Ct. 1237 15

Scholastic Entertainment, Inc. v. Fox Entertainment Group, Inc. (9th Cir. 2003) 336 F3d 982 ..................................................................................................................................... 17

Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417, 433, 78 L. Ed. 2d 574, 104 S. Ct. 774 (1984) .......................................................................................................................... 10

Stock West, Inc. v. Confederated Tribes of Colville Reservation (9th Cir. 1989) 873 F2d 1221, 1225;.................................................................................................................................... 16

Sun Microsystems, Inc. v. Microsoft Corp.(I), 188 F.3d. 1115 (9th Cir.,1999) ................ 10, 14

Sun Microsystems, Inc., v. Microsoft Corporation (II), 81 F. Supp. 2d 1026 , (USDC NDCAL, 2000).......................................................................................................................... 11, 12, 14

Green & Green
1000 Fourth Street, Suite 595, San Rafael, CA 94001
(415) 457-8300    www.greenandgreen.com

United States ex rel. Eitel v. Reagan (D OR 1995) 898 F.Supp. 734, 737 ............................. 16

Valdez v. United States (ED CA 1993) 837 F.Supp. 1065, 1067 ............................................ 17

**Statutes**

17 U.S.C. § 411 ................................................................................................................... 15

17 U.S.C.A. § 507 ............................................................................................................... 16

17 USC § 411(a) .................................................................................................................. 18

28 U.S.C. 1338 (a) .............................................................................................................. 17

28 USC § 1338(a),(b) .......................................................................................................... 17

9 USC § 2 .............................................................................................................................. 8

Business & Professions Code §17200 ................................................................................ 18

**Treatises**

4 McCarthy on Trademarks and Unfair Competition § 25:30 (4th ed.) ................................. 20

Nimmer on Copyright, 3-10 Nimmer on Copyright § 10.15 ................................................. 13

Rutter/West, Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 9-D at ¶ 9:77.10 ................... 16

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 4, 2011 at 10:00 a.m. or as soon thereafter as can be accomplished, in the Courtroom of the Honorable Judge Dean Pregerson of the above-referenced Court, located at 312 North Spring Street, Los Angeles, California, Defendant will move to dismiss the Complaint pursuant to F.R.Civ.P. 12(b)(6) on the ground that it fails to state a claim for relief and FRCivP 12(b)(1) in that the Complaint should be dismissed for Lack of Subject Matter Jurisdiction. The Motion is based upon the Complaint, this  Notice and Motion, the Memorandum of Points and Authorities below, the accompanying Declarations, and Exhibits thereto the [Proposed] Order submitted herewith, and such other and further papers and argument as may be submitted to the Court at or before the hearing on this Motion.

This Motion is being made after multiple communications with opposing counsel and attempts to avoid it were made by phone, email and letter. (Declaration of Green ¶¶3-6)

## I.        Memorandum of Points and Authorities

### Introduction

More than three years prior to filing its complaint (Dillon Decl. ¶ 1, Exhibit GL0001), the Plaintiff entered into a Video Streaming License with Defendant GameLink, dated November 28, 2007.  The License gives GameLink (GL hereinafter) all of the rights to reproduce, and to prepare derivative copies of Angel titles, to make 'streamed' video for Internet viewing and to make short trailers, to distribute, sell and to advertise those titles (Exhibit GL00001 ¶ 2 License).  If one reads the Complaint against GL there is a completely different and false picture painted, as if the License never existed.

A close examination of the License Agreement would have to be made to show the nature

1   of Angel's claims.  Under a license agreement there is a bright line rule that the Licensor
2   waives its rights to sue for infringement. This is because certain rights have been granted to
3   the Licensee and it would be a breach of the License for the Licensor to have the right to sue
4   under the law for violations of the rights it granted.

5      Without any admission that the License Agreement exists,  and no mention of it in the
6   Complaint, GameLink is confused as to how it got named.  It was shocked when GameLink
7   received a letter from Angel's counsel in June, 2010 notifying it that it was allegedly in
8   violation of Angels rights; those very rights it was granted in the Agreement.  GameLink does
9   not recall any contact prior to that letter from Angel (Dillon Declaration ¶ 7) and GameLink
10  immediately took down out of its catalog all Angel titles on receipt of Angel's attorney letter
11  (Dillon Declaration ¶ 8).  GameLink had paid its royalties, in good faith, under the License
12  Agreement and did not expect a copyright case (Dillon Declaration ¶ 4).

13     Now, it's as if those grants of rights are, by the filing of this bare bones form style
14  complaint, transformed from a License Agreement issue into, literally, a Federal Case.  All of
15  this is over some $979 in royalties (see Dillon Decl. ¶ 2). The facts as stated in this Motion
16  show that the Complaint fails to state any valid claims against GL under FRCivP 12 (b) (6)
17  since GL has fully complied with the License Agreement and all of its terms and conditions.
18  As far as GL knew that License Agreement is still in effect.  Also, since this is not a
19  copyright, but a contracts action, with no federal question and no diversity of citizenship, this
20  Court lacks jurisdiction over the matters alleged against GL and Private under FRCivP
21  12(b)(1).

22     Private derives all of its reasons for being named as a party in this Action solely based on
23  the acts of its fully owned company, GameLink. Private bears no separate reason for being
24  named. If GL is dismissed (DILLON Declaration ¶ 12), so should be Private.

25     The argument will show that, as a licensor, Angel waived its right to sue GameLink, its
26  Licensee, for copyright infringement. No exception to this rule applies because Angel has not
27  shown, and cannot show, that a condition of the License has failed or that GameLink
28  exceeded the scope of its License. Based on the plain language of the License Agreement,

1000 Fourth Street, Suite 595, San Rafael, CA 94001
(415) 457-8300   www.greenandgreen.com
Green & Green

Angel fails to demonstrate that GL has violated any of the terms of the License Agreement, or even to make mention of it.

## II.   STATEMENT OF FACTS – The License With Angel Pictures
## Waives Direct and Contributory Claims in Copyright Litigation

On November 28, 2007, Defendant GameLink and Plaintiff Angel entered into a License Agreement (Bates Numbered GL0001, attached to the declaration of Jeff Dillon and made a part hereof).  The License gives GameLink the rights to stream the videos of Angel Pictures' Titles (the Videos), (Exhibit GL0001,  ¶ 1, Decl. of Dillon).  Titles are added to the License using a blanket incorporation - by - reference Exhibit "B."  The License grants to GL the right to show to paying customers, over the internet (Exhibit GL0001 ¶ 6) and to offer to the public, a right to download (Exhibit GL0001 ¶ 6) and/or view the Videos online ("streaming video").

The agreement states:

- "Licensor grants to *GameLink the non-exclusive right to make derivative works of the Licensor Content*

- *in digital formats for use as trailers* and *advertisements*, sample viewing shorts and

- other forms as *GameLink deems necessary*

- *to promote the Licensor Content.*

- *In addition Licensor grants to GameLink a license to use or present any GameLink trademark or logo on such derivative works*."

The License gave GameLink **in the broadest terms**,

- "During the license agreement period,  "…

Green & Green
1000 Fourth Street, Suite 595, San Rafael, CA 94001
(415) 457-8300   www.greenandgreen.com

- GameLink shall have the right to *re-program pre-digitized Licensor Content and*

- *prepare and edit the Content for the DXN encoding key "Open Video System" MPEG-4 and*

- *for other such key or encryption systems of DRM as GameLink shall deem proper in its sole discretion from time to time*,"…

- ***[the right to] …digitize any future new releases until further notice*** [Emphasis Supplied].

The License includes two exhibits. Exhibit "A" lists titles originally agreed to (see Exhibit GL0001), and Exhibit "B" provides GL with full rights for all other and various titles of Angel.  These titles included all the titles mentioned in the complaint.  ***The License gives to Game Link the right to "…digitize any future new releases until further notice or until termination of…"*** (Exhibit GL0001¶ Exhibit B the Agreement). All new titles are to become part of Exhibit "A."   New releases, meaning films newly released and distributed by an authorized distributor. GL got the 'raw' (DVD format) films from Sin City, Inc. another party to this Action (Dillon Declaration ¶ 17), as new releases, in November, 2007. Certainly, the one PAU title *The Pamela Principle*, the first of the Pamelas, was  a new release since it was registered as previously unpublished.

The License automatically renews for periods of one year each until one party notifies the other that they want to terminate (Exhibit GL0001 ¶ 8(a),(b)).  Again, this has not occurred, however, GameLink has pulled all Angel Titles off from its online catalogs (Dillon declaration ¶ 8).  Long, before the Complaint was filed in December 2010, GameLink had paid the royalties specified in the License Agreement for the few sales of streamed Angel Videos (Dillon Decl. ¶ 3).

Green & Green
1000 Fourth Street, Suite 595, San Rafael, CA 94001
(415) 457-8300    www.greenandgreen.com

### a.  Alleged Damages if any are de Minimis;

### License Still Executory

All of the sales since 2007 have amounted to only approximately $979.77 worth (Dillon Decl. ¶ 2). This is an absurd case; an obvious attempt to use this Court for extortion when it is in reality some form of disagreement over a license, if any bonafide claim at all, and even may have Anti-Trust implications for Angel Pictures.

The License Agreement is still in place, and was relied upon for any distribution of any of the Plaintiff's Titles.  In mentioning GL performances and acts permitted under its License Agreement herein, it is not intended to be any admission of liability whatsoever, or any relinquishment of any rights GL or Private has in the matter.   There have been no notices of termination (Dillon Decl. ¶ 5), and no proper notices of breach (Dillon Decl. ¶6). GL received only a request to take down the three titles in May, 2010, and GL complied with that immediately (Dillon Decl. ¶¶ 8, 9).   Thereafter Angel's attorney wrote to  GL about the filing of a complaint (Dillon Decl. ¶ 7, (GREEN Declaration ¶ 2-6). It was a shock and surprise to GL (Dillon Decl. ¶ 10) to receive a letter from Angel's attorney, Purleski, in June 2010 that informed  GL that it was allegedly pirating titles, including a false statement, "Ms. Snyder notified you in May…that GameLink had…pirated…and P.S. I Love You: Pamela's Secret (U.S. Copyright reg'd)…".   Of course this is not true since GL has a License, and also *this title is not registered* according to the Complaint, ¶ 20.[1]

The License calls for termination on notice only – either for breach or in case of a request

---

[1] "P.S. I Love You: Pamela's Secret…. Angel is  seeking to confirm that registration, but at a minimum that movie, and all works  derived from that movie, including all photographic images taken therefrom, is protected by common law copyright."

Green & Green
1000 Fourth Street, Suite 595, San Rafael, CA 94001
(415) 457-8300   www.greenandgreen.com

to not renew its automatic renewal clause, on 30 days' notice to the other party prior to the end of a Term.[2]

GL received the three at issue Titles in due course from Sin City, which was styled (its trademark is on the boxes) to look as the distributor of the DVDs (Dillon Declaration ¶ 17).

The Complaint does not mention the License Agreement at all. It recites facts as if there were never any such License and seems to allege that somehow by total surprise, and unknown to Angel, Angel had allegedly discovered that GL had streamed the Videos it was asked to take down in May, 2010 (which it did).

In its Complaint Angel alleges that "…23. Angel has never granted a license to any party to distribute the Works in a non-DVD format. Angel has not granted any party a license to distribute any of the Works via video-on-demand, downloadable transfer or website streaming." This is an outright false statement to the Court, as evidenced by the written License Agreement.

There are three works in the dock including one unregistered work that should not be here. For some unknown reason Angel has now taken the draconian position to allege as if true that GameLink violated its alleged rights, but GameLink has the right to use them under the License Agreement. If there are any issues between Angel and GameLink, they are contractual only, and do not amount to any form of infringement.

Of the three alleged Titles, one is unregistered and should not be here. There are only

---

[2] At ¶ 8 of Exhibit GL0001 the Agreement provides, "Any notice required to be given pursuant to this Agreement shall be in writing on paper and mailed by certified mail, return receipt requested, or delivered by a national overnight express service, effective upon receipt, or by email if the email requests a return receipt…

Green & Green
1000 Fourth Street, Suite 595, San Rafael, CA 94001
(415) 457-8300   www.greenandgreen.com

two works at issue here, those mentioned as having been registered copyrights. One of those is an "unpublished" registration. With no update from the Plaintiff, it is assumed that the work is unpublished. The only titles in this forum could be the two registered works, *The Pamela Principle* (U.S. Copyright No. <u>Pau</u> 3-019-057) and *The Pamela Principle #2 Hot Dam* (U.S. Copyright No. PA 1-351-185). The third title, *P.S. I Love You: Pamela's Secret* is unregistered.

As for these, all of the Titles have another taint that addresses Angel's "Unfair Competition claims", that Angel's three Titles are, on information and belief, based on a title lifted from an earlier film that is "soft core" in nature (not as xxx – adult hard core as Angel's) and not owned or made by Angel, called the "The Pamela Principal" by Axis Films International. There is therefore a question of the validity of the titles of the Angel pictures alleged herein as called "Pamela Principal," as Angel appears to be using this Pamela series by palming off of another's film title, creating a series of them, and now claiming a trademark. There is no registered mark for the Pamela Principal titles.

Private is not liable if GameLink is not. Private has been named herein on information and belief solely on the basis that GameLink streamed the Angel Videos. Private does not at all and never has, sold, streamed or claimed any direct rights to the Angel Titles and all potential Private liability herein (Dillon Decl. ¶ 12), is denied, and would be only due to its ownership of GameLink, and not through any of its direct acts whatsoever.

### b. Arbitration Clause in License

The License also contains a Mediation-Arbitration clause that states that for, "Any controversy or dispute of claim between the parties relating to this Agreement, (Dillon declaration Exhibit GL 0001) ¶ 10. DISPUTE RESOLUTION, (a)

MEDIATION/ARBITRATION.

The attorney fees clause also provides for arbitration (Dillon Declaration Exhibit GL00001, ¶¶ 10, 11(c). The Federal Arbitration Act that is nationally applicable, provides that a "written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 USC § 2.

These Moving parties reserve the right, should this case continue, to move for an Order to Compel Arbitration.

### III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF

### Under FRCivP 12(b)(6)

### ARGUMENT – POINTS AND AUTHORITIES

The Complaint should be dismissed pursuant to F.R.Civ.P. 12(b)(6). The Complaint does not serve to fulfill any of the reasons for which the Copyright Law was written. The Law is designed to protect artists and authors from unlicensed uses of their works without their permission. For that reason, built into it are the statutory damages and attorney fees. These are for the artist whose works are perhaps not making much money, but the artist needs the teeth of statutory damages.

Angel's works firstly, are tinged with palming off of another production company's title, and secondly, GL has a License Agreement under which sales of the titles show about $979.77 total sales (Dillon Decl. ¶ 2). Under the GameLink – Angel License Agreement, Angel is owed fifty percent (50%) of that and GameLink paid that (Dillon Decl. ¶ 13, see Exhibit GL0001 ¶ 6). What Angel is attempting to do in this action is to use the Copyright

Green & Green
1000 Fourth Street, Suite 595, San Rafael, CA 94001
(415) 457-8300   www.greenandgreen.com

Law to make a completely unreasonable claim for statutory damages, penalties and false trademark claims in shotgun fashion, seeking what it hopes would lead to multiple damages awards far beyond the collection of royalties under the License.

### a. Angel Waived Right to Copyright Claim by Licensing

These major failures in pleading deprive Defendant of fair notice of the claims asserted, and substantially hinder its ability to prepare a defense.  There was a lot of confusion when GameLink suddenly received a complaint based on what it has a License Agreement to do since 2007 (Dillon Decl. ¶ 11).  There is a complete lack of allegations stating when and how Defendant GameLink "infringed."  There are only general allegations that "… *Defendants* caused the Works to be publicly displayed by showing Angel's movies on www.Gamelink.com, www.AdultDVDEmpire.com, www.DVDEmpire.com, www.ExcaliburFilms.com, www.SinCityFilms.com, and www.AEBN.com..."  [Emphasis Supplied].  This generalized pleading permits plaintiffs to pursue profuse claims that should be dismissed as time-barred had they complied with governing pleading requirements.

The GameLink License is dated November 28, 2007, (Dillon Decl. ¶ 14). The License Agreement permitted Defendant GameLink to sell the videos more than three years before the December 15, 2010 filing of the Complaint.

Plaintiff's pleading is vague, at best, as it is impossible for any one Defendant to have streamed the Videos through websites they don't own or operate.  GameLink does not own or have any control over its competitor's sites (Dillon Decl. ¶ 20). GameLink has a License to stream Angel's Videos and therefore the Complaint is confusing and fails to provide proper notice of how any action against GameLink is to be answered (Dillon Decl. ¶ 8).

Green & Green
1000 Fourth Street, Suite 595, San Rafael, CA 94901
(415) 457-8300   www.greenandgreen.com

In <u>Sun Microsystems, Inc. v. Microsoft Corp.(I),</u> 188 F.3d. 1115 (9th Cir.,1999),  the Court held that a licensor waives a right to sue in an action for copyright infringement, "generally, a copyright owner who grants a nonexclusive license to use his copyrighted material *waives his right to sue the licensee for copyright infringement and can sue only for breach of contract.*" <u>Sun Microsystems, Inc. v. Microsoft Corp</u>. (I), 188 F.3d 1115, 1121 (9th Cir. 1999). [Emphasis Supplied].

In <u>Sun</u> it was discussed that, "…the…Plaintiff copyright holder of cross-platform computer programming language filed a suit for copyright infringement and unfair competition under California law against defendant *licensee*. Plaintiff claimed that defendant had exceeded the scope of its license by …[making essentially a derivative work]…. The district court granted plaintiff a preliminary injunction barring defendant from including the incompatible technology in its products.

See likewise, <u>Peer Intl. Corp. v. Pausa Records, Inc.</u>, 909 F.2d 1332, 1338 (9th Cir. 1990), was a case of the failure of a licensee (Peer) to account for or pay royalties for sales of licensed music.  Originally the USDC held that this breach terminated the license after notices and ordered that Peer pay statutory damages. The Ninth Circuit Court reversed this and held that, even under these circumstances, "While the plaintiffs' construction of the 1976 Act is plausible, we find it inapplicable where, as here, the parties have negotiated their own licenses which vary from the statutory scheme. Generally, "anyone who is authorized by the copyright owner to use the copyrighted work in a way specified in the statute . . . is not an infringer of the copyright with respect to such use." <u>Sony Corp. v. Universal City Studios</u>, <u>Inc.</u>, 464 U.S. 417, 433, 78 L. Ed. 2d 574, 104 S. Ct. 774 (1984). In this case, the private license agreements granted Pausa the right to sell."

In <u>Everex Systems, Inc. v. Cadtrak Corporation, 89 F.3d 673 (9th Cir. 1996),</u> a case regarding the assignability of a patent license, the Court, in rejecting a debtor's request to assume a patent license stated, "Cadtrak (licensor) owes significant continued performance to the licensee: it must continue to refrain from suing it for infringement, since a nonexclusive patent license is, in essence '*a mere waiver of the right to sue*' the licensee for infringement. "

Green & Green
1000 Fourth Street, Suite 595, San Rafael, CA 94001
(415) 457-8300   www.greenandgreen.com

citing <u>De Forest Radio Telephone Co. v. United States</u>, 273 U.S. 236, 242, 71 L. Ed. 625, 47 S. Ct. 366, (1927). [Emphasis Supplied] .

Similarly, in a case where music was licensed to and written for the Miracle baseball team, the 'consideration' was that JMI asked only for its out of pocket production costs and that the team credit him as the author anytime the song was played.  The team played the song many times without giving JMI the promised authorship credit.  JMI then formally registered the song with the U.S. Copyright Office, and notified team that its use of the song constituted copyright infringement.  The Court denied to call this infringement "We think it follows that until permission was withdrawn in October, JMI granted to the Miracle a nonexclusive license to play the song at games. In so saying, we do not suggest that Albion and JMI waived their rights to be compensated by the Miracle in accordance with their oral understanding. What they waived was: any right to sue for breach of copyright on account of the playing of the song while the license was in effect." See <u>Jacob Maxwell, Inc. v. Michael Veeck</u>, 110 F.3d 749 (11th Cir. 1997).

### b.  Angel Cannot Demonstrate an Exception to its Waiver

Sun (I) decided that the Defendant bears the burden to show some exception to the License Waiver:

> "…We must decide an issue of first impression: …whether, where two sophisticated parties have negotiated a copyright license and dispute its scope, …, before Sun can gain the benefits of copyright enforcement, it *must definitively establish that the rights it claims were violated are copyright, not contractual, rights*…." Sun (I), 188 F.3d, at 1122 (9th Cir., 1999) [Emphasis Supplied] .

Now Angel must definitively establish that some condition to the License with GameLink was not met to potentially proceed here, not that it had violated some contractual rights or covenants before it can proceed in this Court.

On Microsoft's appeal this issue played out, <u>Sun Microsystems, Inc., v. Microsoft Corporation (II),</u> 81 F. Supp. 2d 1026 (USDC NDCAL, 2000), the court vacated the

Green & Green
1000 Fourth Street, Suite 595, San Rafael, CA 94901
(415) 457-8300   www.greenandgreen.com

injunction and remanded for further proceedings. Likely to prevail *on its interpretation of the license agreement language,* and to *prove that defendant's conduct violated it*, the court held that the district court should not have invoked the presumption of irreparable harm applicable to *copyright infringement claims,* without first determining that the compatibility requirements were a limit on the scope of the license, rather than independent *contractual covenants*. The court further held it was error for the district court to enter an injunction on the unfair competition claim solely on the basis of defendant's past conduct." [Emphasis Supplied, excerpt from the Synopsis in the Lexis Edition. Full Cite at p. 111].

The USDC failed to reinstate Copyright Act based injunctions. <u>Sun Microsystems, Inc., v. Microsoft Corporation (II),</u> 81 F. Supp. 2d 1026, (USDC NDCAL, 2000), on Remand, the USDC stated that it had to make certain findings before it could reinstate the injunctions it had issued prior to the appeal. The NDCAL court stated, "This court must answer at least two questions before any order of reinstatement of the injunction *based upon copyright infringement* can be made. **First**, the court must decide *whether the compatibility provisions set forth in the TLDA [License] limit the scope of Microsoft's license or stand only as independent covenants*. **Second**, if necessary, the court needs to consider *whether issuance of the injunctive relief requested by Sun requires a finding of willful and intentional breach of the TLDA's compatibility provisions*. Id." Sun II, Op. Cit.,1028.

In other words, the appeal required the District Court to examine (1) whether the language of the agreement was being properly interpreted by the Licensor and (2) whether the Court could enjoin due to a finding of infringement based on willful violation of the party's License due to a failure of a precondition, but not, based on the Act, if it were a breach of contract issue.

Angel has pleaded, and can plead, no such exception that allows it to show that conditions of the License Agreement were not met, rather than covenants. The discussion above of the terms of the License Agreement show that it is not terminated until there is written notice. The grant provides GameLink with full use of the Works over the Internet – to distribute them, display them, make derivative works of them, and to perform them.

The evidence is clearly that a License Agreement exists between GameLink and Angel. It is irrefutable that the License language allows multiple titles to appear in streaming video (Dillon Decl. ¶ (4) and the License requires GameLink to maintain access to the films to allow its customers who subscribed to it to expire and other terms (Exhibit GL0001 ¶ 8 (c), attached to the Dillon Decl.[3]). Lastly, this Complaint was filed after GameLink informed Angel's counsel that the License exists, even sending him a copy of the (Green Decl. ¶ 3-5) signed License Agreement.

*Nimmer on Copyright* provides a lot of insight into this process of contractual analysis that may or may not have been violated. Nimmer's analysis is succinct:

> "If the grantee under an assignment or *license* uses the work in violation of the provisions of the authorizing instrument, *the grantor may have an action for breach of contract*. Specifically, *a cause of action for breach of contract arises if the grantee's improper conduct constitutes breach of a covenant undertaken by the grantee* (as distinguished from his failure to satisfy a condition to his authorization) and if such covenant constitutes an enforceable contractual obligation.   Whether he will be entitled to damages or injunctive relief, or a combination of both, depends on *general principles of contract law beyond the scope of this treatise.* Likewise beyond the current scope is defining, under relevant *state contract law, the distinction between a covenant and a condition.*" (Nimmer on Copyright, 3-10 Nimmer on Copyright § 10.15).

If the Court were to leave the Complaint in place and as it stands, then the Plaintiff is asking the Court to do this analysis. It is not the general province of Federal Courts to take a state law case with no basis for jurisdiction (such as diversity or other federal question) and ask for a remedy that the Agreement and practice of the parties do not contemplate and that they did not agree to or bargain for.

This means that "a licensee's breach of a covenant independent of the license grant does

---

[3] The License provides, "GameLink shall , until notified by Licensor in writing : Continue to provide services as required to its then existing customers who continue to have viewing rights paid…"

Green & Green
1000 Fourth Street, Suite 595, San Rafael, CA 94001
(415) 457-8300   www.greenandgreen.com

not support a claim for copyright infringement". <u>Effects Associates, Inc. v. Cohen</u>, 908 F.2d 555, 559 (9th Cir.1990). "The rules of contract construction embodied in California law control the interpretation of the [license agreement] to the extent that such rules are consistent with federal copyright law and policy." <u>Sun Microsystems, Inc. v. Microsoft Corp.(I)</u>, 188 F.3d 1115, 1122 (9th Cir. 1999). Therefore, "the court must review the entire [license agreement] and effect the mutual intention of the parties as gathered from the four corners of the instrument". <u>Sun Microsystems, Inc. v. Microsoft</u> II, 81 F.Supp. 2d 1026, 1032 (N.D. Cal. 2000). citing: Machado v. Southern Pacific Transportation Co., 233 Cal.App.3d 347, 352, 284 Cal.Rptr. 560 (1991).

In the absence of contractual language reflecting that the copyright license is conditioned upon, or that its scope is limited by, other terms, there can be no finding of copyright infringement. <u>Effects Assocs.</u>, 908 F.2d at 559 n.7. Additionally, conditions precedent are disfavored and will not be read into a contract unless required by plain, unambiguous language. <u>Effects Associates, Inc. v. Cohen</u>, op. cit at p.559 (9th Cir.1990).

All the Defendants GameLink and Private can do is speculate how it violated the Agreement to be sued. It knows it paid the royalties (Dillon decl. ¶ 4). GameLink knows it has an Agreement in place and it knows that it made hardly any sales of these Titles (Dillon Decl. ¶ 13). It does not know what it could have done wrong and the Complaint does not explain it. GameLink has a special case here, and the Complaint, rather than alleging Plaintiff never licensed internet delivery, could have alleged what GameLink did wrong here. There is no clue; no mention of any breach. GameLink is confused because it has the License to do what it is alleged to have done. There is nothing in the Complaint that gives any clue to any conditions, breaches or any other license issue since it denies any license ever.

### c.  Unregistered Work

The Copyright Act, 17 U.S.C. § 411,  'Registration and civil infringement actions, provides,' "(a) …no civil action for infringement of the copyright in any United States work shall be instituted until *preregistration or registration of the copyright claim has been made* in accordance with this title." [Emphasis Supplied]

Certainly there can be no action in this Court for the unregistered title *P.S. I Love You: Pamela's Secret.* The Plaintiff does not even allege that this title has a pending application.

These Defendants are aware of the recent holding in Reed Elsevier, Inc., v. Irvin Muchnick, Et Al. (No. 08-103., March 2, 2010), 130 S.Ct. 1237, that a copyright holder's failure to comply with the registration requirement does not restrict a federal court's subject-matter *jurisdiction* over infringement claims involving unregistered works. The Court stated that though Section 411 did not expressly restrict subject matter jurisdiction:

"…Because § 411(a) does not restrict a federal court's subject-matter jurisdiction, this Court need not address the question …[of]… the Second Circuit's erroneous reading of § 411. The Court also *declines to decide whether § 411(a)'s registration requirement is a mandatory precondition to suit that district courts may or should enforce sua sponte by dismissing copyright infringement claims [of unregistered works]*…" Reed, op cit., 130 S.Ct. 1237, 1240.

Thus Reed leaves unanswered the question of whether an unregistered work that is alleged in an infringement action under §1138(a) should be dismissed or stricken because it is unregistered and does not qualify because it does not meet the precondition to suit. GameLink believes that it should be dismissed or stricken. If it is not, Plaintiffs would need to prove that the unregistered film is covered by the Copyright Act and that the film they are touting was violated is the same or substantially similar to the one alleged to have been video streamed.

### d.  The Three-Year Statute of Limitations

There is another defense of GameLink and Private of the Statute of Limitations. More

Green & Green

1000 Fourth Street, Suite 595, San Rafael, CA 94001
(415) 457-8300   www.greenandgreen.com

than three years ago GameLink began to stream Angel Titles under its License Agreement as alleged, and as shown in Exhibit GL0001.   In the Copyright Act, 17 U.S.C.A. § 507, Limitations on actions, provides in pertinent part, "(b) Civil Actions.--No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."

The Agreement was signed by Angel's CEO on November 29, 2007 (Dillon Decl. ¶ 16, Exhibit GL000001 Page 1.).  GameLink has had the three Angel Titles it has sold since that Agreement (Dillon Decl. ¶ 15), and it was over three years between the Agreement formation and the filing of the current action. Defendant believes that it had some of the Title(s) mentioned in the Complaint as early as at least Nov 28, 2007 (Dillon Decl. ¶ 16) to be encoded and rendered for streaming use, and that they went up for viewing very soon after the Agreement is dated.

## IV.   THE COMPLAINT FAILS FOR LACK OF SUBJECT MATTER JURISDICTION 12(B)(1)

Since the Plaintiff is the party who invoked the Court's jurisdiction "the plaintiff bears the burden of establishing federal subject matter jurisdiction. In effect, the Court traditionally presumes lack of jurisdiction until plaintiff proves otherwise. According to *Rutter/West,Cal. Prac. Guide Fed. Civ. Pro. Before Trial* Ch. 9-D at ¶ 9:77.10,  the Plaintiff bears the heavy burden of proof when it comes to the allegations of jurisdiction, citing: <u>Kokkonen v. Guardian Life Ins. Co. of America</u> (1994) 511 US 375, 376–378, 114 S.Ct. 1673,  1675; <u>Stock West, Inc. v. Confederated Tribes of Colville Reservation</u> (9th Cir. 1989) 873 F2d 1221, 1225; <u>Crowley Marine Services, Inc. v. Fednav Ltd.</u> (ED. WA, 1995) 924 F.Supp. 1030, 1033 (citing Rutter text); <u>United States ex rel. Eitel v. Reagan</u> (D. OR, 1995) 898 F.Supp. 734, 737

Green & Green
1000 Fourth Street, Suite 595, San Rafael, CA 94001
(415) 457-8300   www.greenandgreen.com

(quoting Rutter text); <u>Valdez v. United States</u> (ED CA 1993) 837 F.Supp. 1065, 1067 (citing

Rutter text), aff'd (9th Cir. 1995) 56 F3d 1177]."

Jurisdiction in this case is alleged by Plaintiff to be based on the federal question

provided for under the Copyright Act pursuant to 28 U.S.C. 1338 (a). There is no allegation of

Diversity and the parties, GameLink and Angel, are in California.  The Copyright Act supplies

exclusive jurisdiction to the Action, 28 U.S.C. 1338, if a few conditions are met, one of them

being that there is an alleged violation of one of the bundle of copyrights.  Here Plaintiff

alleges that it "Never" issued any license to any of the Defendants that allowed for "other than

DVD sales", meaning the sale of DVD hardware versions of the alleged Films. As

GameLink's evidence shows, this is not true.

District courts have original jurisdiction over claims "arising under" federal laws relating

to copyrights, and related claims of unfair competition. 28 USC § 1338(a),(b); see <u>Scholastic</u>

<u>Entertainment, Inc. v. Fox Entertainment Group, Inc.</u> (9th Cir. 2003) 336 F3d 982, 986).

These Defendants can show herein that GameLink, LLC[4], has a license to allow it to

stream on the Internet, the Titles in this matter. (See Exhibit GL0001 attached to the

declaration of Dillon.)

One of these Titles does not have a copyright registration and thus should not be by

bright line rules, a part of this Action. The film *P.S. Pamela's Secret* is alleged as having been

made into a DVD and thus, having been set forth in a tangible medium of expression.  As this

is an unregistered work it has lost its "common law" copyright.  Without any claim based on

allegations of infringement of registered copyrights, there is no jurisdiction. It is and remains

a purely contract set of claims, if any valid claims can be asserted. On information and belief,

---

[4] And thus through GameLink, LLC rests Private Media, Inc.'s potential liability since GameLink, LLC is a
subsidiary of Private Media

Green & Green
1000 Fourth Street, Suite 595, San Rafael, CA 94001
(415) 457-8300   www.greenandgreen.com

1   Defendants believe that under the party's License Agreement (Attached to the Dillon Decl. as
2   GL00001) and, based on the information at hand, sales were about $979 total revenue, for all
3   Angel titles ever.

4   Most courts hold the Copyright Act's registration requirement (17 USC § 411(a)) is
5   jurisdictional, so that there is no federal jurisdiction in infringement actions involving
6   unregistered copyrights. <u>In Re Literary Works in Electronic Databases Copyright Litig</u>. (2nd
7   Cir. 2007) 509 F3d 116,118.

8   The conduct complained of here, amounts to an almost verbatim copying of a form
9   complaint, not unknown and available to all, that fails to allege any specific facts about the
10   License Agreement with Game Link (and thus Private).

11   The parties GameLink (Dillon Decl. ¶ 11) and Angel (Complaint) both have their main
12   offices located in this state, and within this circuit (Complaint, Paragraphs A. 2. , as to Angel
13   and A. 6.)  Paragraph A. 6. Also points out that Plaintiff also believes that GameLink is a
14   subsidiary of Private.

### V.   Claims of Unfair Competition Fail Where License Waives Rights and provides GL Rights to use Angel trademarks in its Discretion

17   Just as the copyright infringement falls for waiver through licensing, so too do the
18   allegations of alleged unfair competition.

19   Bald allegations based on claims made in the Copyright allegation that the use of the
20   Titles is somehow a violation of any trademark rights Plaintiff may have fails to state a claim.

21   B&P Code §17200 is designed for members of the public to sue for unfair competition.
22   Section 17200 states, "As used in this chapter, unfair competition shall mean and include any
23   unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or
24   misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500)
25   of Part 3 of Division 7 of the Business and Professions Code."  The totality of the claims in
26   the Action against these Defendants smacks itself of unfair competition, see <u>In Re Acacia</u>
27   <u>Media Technologies Corp.</u>, (ND CA 2005) 2005 WL 1683660.

Green & Green
1000 Fourth Street, Suite 595, San Rafael, CA 94001
(415) 457-8300   www.greenandgreen.com

The Complaint fails to allege one fact that constitutes such claims but merely states that, "Defendants have engaged in fraudulent, unfair and unlawful conduct including, but not limited to, the unauthorized copying, reproducing, distributing, and/or selling of Angel's Statutory Copyrighted Works and Common Law Copyrighted Work, without Angel's authorization, in violation of the Copyright Act."

GameLink has had (at all relevant times) a License to sell the Angel Videos online as stated herein. Angel waived any right it had to complain that GameLink was distributing, copying and reproducing these Videos under the License. As soon as Angel notified GameLink that it had an issue with this License, GL pulled the titles off its virtual shelves (Dillon Declaration ¶ 9). During the License Agreement period, under the License, "…GameLink *shall have the right to re-program pre-digitized Licensor Content and prepare and edit the Content* for the DXN encoding key "Open Video System" MPEG-4 and for other such key or encryption systems of DRM as *GameLink shall deem proper in its sole discretion from time to time, and publish the Content for download and viewing over the Internet using any server system*, including third party delivery mechanisms…" [Emphasis Supplied].

**GameLink also was given the rights to use trademarks**, "…as *GameLink deems necessary to promote the Licensor Content. In addition Licensor grants to GameLink a license to use or present any GameLink trademark or logo on such derivative works*."

In applying for a trademark one must declare under penalty of perjury that they know of no other mark that is similar with prior rights. *The Pamela Principal* was a film that was released by Axis Films in 1975, not Angel. *The Pamela Principal* is one title. It is a common practice that the US PTO will refuse registration for a single title of a work. Of the others, one is an unpublished work that means, it is not being used in commerce, and the other is not registered and so its status remains in doubt. They do not amount to evidence of use in commerce. Also, no trademark is applied for or registered in the USA with this title. (Green Decl. ¶ 10)

A trademark licensee's right to use of a mark is defined by the valid terms of the trademark license. That is, the license defines the boundaries of the licensee's permitted use.

1  *By definition, a party who holds a valid license to use a trademark and is not in breach of the*

2  *license cannot be an infringer of the licensed mark.* As the Seventh Circuit observed: "Where

3  the trademark holder has authorized another to use its mark, there can be no likelihood of

4  confusion and no violation of the Lanham act if the alleged infringer uses the mark as

5  authorized."

6  *Every license carries with it a waiver of the right of the trademark owner to sue*

7  *for infringement arising out of acts that fall within the scope of the license.* 4 McCarthy on

8  Trademarks and Unfair Competition § 25:30 (4th ed.).

9  GameLink has a license that includes broad rights to advertise, make clips of, trailers and

10  other materials in needs to promote and to sell the titles. It has expressly this right in the

11  License Agreement, as it is quoted above.

12  Therefore, as in the Copyright claims, Plaintiff fails to state any claim against GameLink

13  for unfair competition sounding in any of the rights GameLink has in its License Agreement.

14  Angel is unable to allege the basic elements of the claims and offers no factual detail

15  whatsoever. There are no trademark registrations for any 'Pamela' films or other in class 009

16  (videos), (Green Decl. ¶ 11).

17  In June, 2010 GL directly received a letter from Angel Pictures Counsel dated June 14,

18  2010 and forwarded by GameLink to GL Counsel in August, 2010.  (Green Decl. ¶ 2)  On

19  August 4, 2010 he wrote back to Counsel for Angel and explained the low sales, the fact of

20  the License Agreement and the non-termination.  (Green Decl. ¶¶ 3, 4, 5) He also pointed out

21  to Counsel for Angel that the videos in question had been taken down in May, 2010 (Green

22  Decl. ¶ 7, 8). He mentioned that it was unclear that Angel had the rights they asserted in the

23  letter from Angel's Counsel (Green Decl. ¶ 9), without copy to GL Counsel, its publicly

24  registered Copyright agent (See www.copyright.gov[5]) (See Exhibit GL00013-14 attached to

25

26

27

28  [5] http://www.copyright.gov/onlinesp/agents/g/gali.pdf

Green & Green
1000 Fourth Street, Suite 595, San Rafael, CA 94001
(415) 457-8300   www.greenandgreen.com

Green Decl. ¶ 6).  GL believes that the copyrights are and were unclear.  The GL License Agreement (attached to Dillon Decl., Exhibit GL0001) was shown to Angel's attorney in an email and mentioned in a letter back to Angel (attached as Exhibit GL000013, 14 to the Green Decl. ). (The two with Exh. GL00013-14 are your ¶ 6 answer. This is worded oddly). In short, Angel's counsel knew before they filed the current complaint that GL has a License, that license waived these claims and all matters between GL and Angel should be resolved through Arbitration.

## VI.    CONCLUSION

### No Infringement and No Contributory Infringement

If the Court follows the line of reasoning in the Microsoft Cases cited, the path is clear. The language of the GameLink – Angel License clearly states that GameLink was granted the right to stream videos of Angel, and that the title list was open-ended as to how many and what titles were included.  Though there were few sales of any of the titles, those asserted in this law suit are in part ineligible for Federal copyright infringement protection in this Court and another was only registered as unpublished. This raises a cloud on the claims and what that unpublished work became, how it may have changed and what rights Plaintiff has in them. As to the only title claimed here, that might have this Court's jurisdiction, depends upon the interpretation of the Agreement that grants permission to GameLink and Private.

The total of about $979.77 in sales over the more than three years since the streaming of Angel titles began has been paid.  There is no remaining issue between the parties. The maximum damages here would be the contract damages.

Because Private has been named, solely because of GameLink's License as alleged herein, there can be no contributory infringements as to Private if GL has not infringed.

Without making any admission of liability whatsoever, if the Court finds contrary to Defendant GameLink arguments, and that there might be a stated case of liability then GameLink believes that any damages awarded would not include any attorney fees or more than innocent findings and a rather low damages award against these Defendants.

Green & Green
1000 Fourth Street, Suite 505, San Rafael, CA 94001
(415) 457-8300   www.greenandgreen.com

1        Therefore, Gamelink, LLC and Private Media Inc. ask this Court to dismiss the

2   Complaint in its entirety as to these parties.

3

4   DATED: February 24, 2011

5

6   RESPECTFULLY SUBMITTED BY:

7

8   _____

9   PHILIP GREEN, Attorney for PRIVATE
    MEDIA GROUP, INC. and GAMELINK, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Green & Green
1000 Fourth Street, Suite 595, San Rafael, CA 94001
(415) 457-8300   www.greenandgreen.com